CALVIN *v.* STATE.

(Division B. May 18, 1936.)

[168 So. 75. No. 32088.]

**W. W. Venable,** of Clarksdale, for appellant.

700

**W. D. Conn, Jr.,** Assistant Attorney-General, for the state.

**Ethridge, P. J.,** delivered the opinion of the court.

The appellant, Sam Calvin, was indicted in the circuit court of Coahoma county, at its September, 1935, term, for the murder of one Norman Griffin, was convicted and sentenced to serve a life term in the state penitentiary, from which this appeal is prosecuted.

The testimony of the witnesses varies somewhat as to the exact words and acts that took place, but it is substantially in accord as to the main facts of the case,

and shows that Sam Calvin and Norman Griffin engaged in a "tussle" or friendly struggle, more in play than anything else; that Norman Griffin threw Sam Calvin to the ground on his face, and he got dirt in his face and mouth; that Calvin jumped up, using profane language, and said he was going home and get his gun and kill all of them, Norman Griffin's brother-in-law, brother, and sister, being present on this occasion; that Calvin proceeded in the direction of his house and Griffin overtook him and stated to Calvin: "What do you want to go home and get a gun and kill all of us for? You know we have just been playing." The testimony also shows that when Griffin ran up to where Calvin was as he proceeded toward his house, he turned and struck Griffin with a knife in the breast, from which wound he shortly died.

Another witness testified that when Griffin ran up to the appellant, he (Griffin) said: "Come on back, and don't get no gun as I was just playing with you."

Another witness testified that what Griffin said to Calvin was: "Come on back boy, us is not mad, us is only playing."

The version of the appellant is that he was not feeling well that morning and objected to tussling and playing; that Griffin, who was a more powerful man than the appellant, jumped on him and beat him up; that, when he started to the house to get the gun, Griffin ran after him; that he told Griffin not to come on him; and that he struck Griffin with a knife to keep him from whipping him (appellant) again.

The main contention on appeal is that the evidence is insufficient to sustain the conviction of murder, and that the instruction requested by the appellant limiting the killing, on the facts, to manslaughter was erroneously refused.

It is contended that it is clear that the appellant did the killing in the heat of anger and that the conviction,

under the law, could not be sustained for more than manslaughter; that Calvin was forced into a physical contest; and that his passion was aroused by what happened in the contest not of his own choosing.

The law of Mississippi is liberal on what constitutes manslaughter on the facts, and makes considerable allowance for the frailties of human passion; but the facts here involved do not, per se, constitute manslaughter, and there is no contention in the briefs that it was justifiable homicide. Whether the facts developed constitute, in this case, manslaughter is a question for the decision of the jury. There does not appear in the record to be much to justify reducing the crime to manslaugher. The appellant, when he arose from the struggle, declared his purpose to get his gun and kill Griffin and others, using expletives indicating malice, and it was a question for the jury, even if it would have been manslaughter if the killing had occurred instantaneously, or immediately after the struggle, before there was sufficient time for deliberation and reason. There must not only be passion and anger to reduce a crime to manslaugher, but there must be such circumstances as would indicate that a normal mind would be roused to the extent that the reason is overthrown and that passion usurps the mind destroying judgment.

Of course, there are people who refuse to restrain the infirmities of temper, but the law does not excuse their so doing unless the circumstances are adequate to show great provocation. In the case at bar, we do not find, from the evidence, such a state of facts as would warrant us in setting aside the jury's verdict, and the judgment of the court below will, therefore, be affirmed.

Affirmed.